IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JONATHAN D. TAMEZ,

     Plaintiff,

vs.                                                    CASE NO. 5:04cv87-WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____/


## MEMORANDUM OPINION

     This is a social security case referred to me upon consent of the parties for all

further proceedings.  Docs. 6 and 10.  After review of the memoranda filed, the decision

of the Administrative Law Judge, and the record, It is concluded that the decision of the

Commissioner to deny Plaintiff's application for benefits should be affirmed.

**Procedural status of the case**

     Plaintiff, Jonathan D. Tamez, applied for childhood disability benefits and

supplemental security income benefits on January 10, 2000.  R. 61-62.  He filed this

case in this court on April 12, 2004, four years after he filed his application.  Doc. 1.  On

June 9, 2004, Respondent moved to remand the case for another administrative hearing because portions of the audiotape of the first hearing were inaudible, and the case was remanded pursuant to sentence six of 42 U.S.C. § 405(g).  Docs. 11 and 12. The proceedings on remand took another three years.  The answer and transcript of the second administrative hearing were filed on June 18, 2007.  Doc. 41 and 42.

Plaintiff was born September 24, 1979, was 26 years old at the time of the administrative hearing on October 19, 2005, has a 9th or 10th grade education, and had past relevant work as a stock clerk.  R. 251, 253.  Plaintiff alleges disability due to scoliosis[1] causing back pain and adjustment disorder.  The Administrative Law Judge found that while Plaintiff can no longer do his past relevant work, which required the ability to do heavy work, he retains the residual functional capacity to do medium work[2] with certain mental limitations.  He found that Plaintiff can do other jobs that exist in substantial numbers in the national economy and, therefore, was not disabled as defined by Social Security law.  Plaintiff contends that the Administrative Law Judge failed to explain adequately why he did not credit Plaintiff's testimony as to the degree of pain, depression, and anxiety that he experiences.

---

[1] Scoliosis is an appreciable lateral deviation in the normally straight vertical line of the spine.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[2] 20 C.F.R. § 404.1567(c) provides:  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c) is identical.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

Plaintiff's claim for childhood disability benefits was based upon 42 U.S.C. §

402(d) as a disabled child of a deceased wage earner.  R. 61-62.  The Administrative

Law Judge stated that the issues to be determined as to this application were:

> . . . whether the claimant is the child of the wage earner, is unmarried
> (unless one of the exceptions in 20 CFR § 404.352(b)(2) applies[)], has
> established he was dependent on the wage earner, and is under a
> disability that began prior to the claimant's attainment of age 22.

R. 238.  Thus, the claim was filed pursuant to § 402(d)(1)(B)(ii).  This requires proof of

disability as defined in 42 U.S.C. § 423(d).  As restated in Duraku v. Barnhart, 2002 WL

31956008 (E.D. N.Y. Dec. 10, 2002):

> To receive benefits as a disabled adult child, an applicant must show that
> she was the unmarried child of an individual who was entitled to old-age or
> disability benefits or died a fully or currently insured individual, that she
> was dependent on that individual at the time of his death, and that she
> was under a disability, as defined in 42 U.S.C. § 423(d), before she turned
> twenty-two.  42 U.S.C. § 402(d)(1); see 20 C.F.R. § 404.350.

2002 WL 31956008, *2.  Since disability must be shown as defined by § 423(d), the

Commissioner uses the adult five step method to determine disability.  Id., at *3.

The ALJ found that Plaintiff had satisfied all of the childhood disability benefits

requirements of 42 U.S.C. § 402(d) except disability.  Id.  A disability is defined as a

physical or mental impairment of such severity that the claimant is not only unable to do

his previous work, "but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national

economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes this sort of childhood disability benefits claim just as an adult claim, in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairments?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent other work?

A positive finding at step 1 or a negative finding at step 2 results in disapproval of the application for benefits.  A positive finding at step 3 results in approval of the application for benefits.  At step 4, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step 5 to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Analysis**[3]

### The evidence from the administrative hearing

Plaintiff testified that he could read and write, but had trouble reading small print and had a hard time reading a newspaper.  R. 252.  He was six feet tall and weighed 318 pounds.  R. 253.  This was his usual weight.  *Id.*

Plaintiff said he worked as a stock clerk at Wal-Mart for only two months.  R. 253.  The job was entirely physical and had no paperwork requirements.  R. 254.

Plaintiff testified that suffers from agoraphobia, anxiety, and depression, and that these conditions interfere with his ability to work.  R. 255.  He also said he has "paralyzing pain through my lower back."  *Id.*

Plaintiff said he had anxiety attacks about once a day.  R. 255.  An attack of anxiety could last a couple of hours to a whole day.  R. 256.  He said that crowded places, small rooms, and being around people are all triggers for anxiety.  *Id.*  Plaintiff said he could not afford anxiety medicine now.  *Id.*  He said he was on a waiting list, and was trying to get a referral to "life management."[4]  *Id.*

Plaintiff said he got depressed "off and on," sometimes with anxiety.  R. 256-257.  He said he usually keeps to himself when he is depressed.  R. 257.  Depression occurs,

---

[3] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, as available to the court on Westlaw.  Only the PDR 2005 and earlier are available.  Medical terms come from DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at:  http://www.mercksource.com (Medical Dictionary link).

[4] Life Management Center of Northwest Florida.  R. 170.  This Center provides mental health services.  *Id.*

he said, sometimes every night, sometimes once a week.  *Id.*  Plaintiff was not taking any medication for depression.  *Id.*

Plaintiff said he was having "more severe pains in my lower back."  R. 258.  He said it was "paralyzing."  *Id.*  He said it felt like "pinching nerves" when he tried to get up. *Id.*  He said he experienced this "once a day, every other day."  R. 259.  When this occurred, he said he could not do anything "but try to just stand up to actually try to walk."  *Id.*  Plaintiff then said this pain was becoming more frequent, "like between a month, to a week," or "once every week."  *Id.*  He thought that he could stand for less than an hour, probably only 15 or 20 minutes, before feeling pain.  R. 260.

Plaintiff said that when he tried to lift a heavy weight, he got "these popping sensations throughout my back."  R. 260.  He could lift the weight, but "[i]t feels like my back's popping and crackling."  R. 261.  It was not that  painful, he said, to lift a gallon of milk.  *Id.*

Plaintiff said he did not socialize, that he had been that way since he was little. R. 262.  He said he had trouble cleaning the house or doing household work because he would "hit that spot" in his back and experience "real severe pain."  *Id.*

Plaintiff said he quit his Wal-Mart job due to:

> The pain, the crowdedness, the people, anxiety attacks.  I had trouble sleeping.  I couldn't think straight.  I had too many problems, too many things going on.  It all hit me at once and I attempted suicide.

R. 262.  He did not return to Wal-Mart after his suicide attempt.  *Id.*  He said that he "overdosed" with Ativan.[5]

---

[5] Ativan, which is lorazepam, is benzodiazepine with antianxiety, sedative, and and anticonvulsant effects.  PHYSICIANS' DESK REFERENCE (2003).

Plaintiff testified that he lives with his two children, ages three and one, and their mother, to whom he is not married.  R. 263.  His three year old child has cerebral palsy and cannot walk or talk.  *Id.*  Plaintiff said that the mother of these children, her parents, and her sisters come to his house to help.  R. 255.

Plaintiff said that no physician told him to lose weight.  R. 256.  He said he had lost weight in the past, and it made no difference with the pain.  *Id.*  Plaintiff said he had not had any back surgery.  R. 267.  He said he took only Advil, that he did not have money for medication or to go to the doctor.  R. 268.

The vocational expert testified that Plaintiff's job as a stock clerk at Wal-Mart required the ability to do heavy work.  R. 270.  The ALJ asked the vocational expert to assume that Plaintiff could do work requiring medium exertion, with moderate limitations in ability to make judgments on simple work-related decisions, to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to work pressures and changes in a usual work setting.  The expert said that such a person could not do Plaintiff's past relevant work as a stock clerk because that required the ability to do heavy work.  R. 270-271.  Such a person, said the expert, still could do other jobs in the national economy, such as automobile detailer, laundry worker two, and hand packer.  R. 271-272.

The expert assumed that "moderate" restrictions would not affect Plaintiff's ability to do work.  R. 272.  She agreed that a "marked" restriction would severely limit Plaintiff's ability to do work.  R. 272-273.  She said that the jobs identified for Plaintiff

were so unskilled, with an SVP (specific vocational preparation)[6] of 2, that he would

have to have an "extreme" limitation to be completely precluded from doing such a job.

R. 273.

### The medical evidence

On August 30, 1999, Plaintiff was admitted to Kino Community Hospital for a

suicide attempt by overdose of Ativan.  R. 190.  He said that he had ingested ten one-

milligram tablets.  *Id.*  A drug screen of his urine, however, was negative for

benzodiazepines.  *Id.*  Dr. Denis Fiallos noted that he was not sure "whether he, indeed,

took an overdose or not."  *Id.*  Plaintiff said that his scoliosis caused pain and that he

had applied for disability.  R. 191.  He reported he had been working for the prior six

weeks as an overnight stock clerk for Wal-Mart, but he did not have much of a  previous

work history.  R. 191-192.  He was then only 19 years old, nearly 20.  R. 192.  Plaintiff

denied being depressed during the interview, but it was thought that his judgment was

impaired.  *Id.*  The diagnosis was adjustment disorder with mixed disorder of emotions

---

[6] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  *See* SSR 00-4p, available at 2000 WL 1898704.

and conduct.  *Id.*  A GAF[7] of 30 was assigned on intake.  *Id.*  A GAF of 70[8] was

assigned on discharge, on September 1, 1999.[9]  R. 179.

On October 30, 1999, Plaintiff had an MRI of his thoracic and lumbar spine.  R.

108.  Focal scoliosis was found at T3-4, without evidence of further abnormality.  *Id.*

There was no evidence of "signal disc bulge or disc herniation," and there was "no

abnormal signal" "within the cord at this level" and no sign of "cord impairment."  *Id.*  At

the L4-5 and L5-S1 level, mild spondylosis[10] was found with very mild effacement of the

neural foramina with no evidence for nerve root impingement or spinal canal stenosis.[11]

R. 109.

---

[7] "The GAF [Global Assessment of Functioning] scale reports a 'clinician's assessment of the individual's overall level of functioning.'  *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994)."  Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).  A GAF of 31-40 is defined as a "[m]ajor impairment in several areas, such as work or school, family relations (e.g., depressed man avoids friends, neglects family, and is unable to work . . . )."  Thompson v. Barnhart, Case No. CIV A 05-11051-DPW, 2006 WL 2506035, * 5, n. 3 (D. Mass. 2006).

[8] "GAF score of 61-70 reflects mild symptoms or 'some difficulty' in those areas, but the individual 'generally function[s] pretty well.' "  Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).

[9] Page 179 is the last page of the discharge summary by Dr. Fiallos, a four page document.  The first three pages of this report do not appear to be in the record.

[10] Spondylosis is the ankylosis of a vertebral joint or degenerative spinal changes due to osteoarthritis.  Ankylosis is the immobility and consolidation of a joint due to disease, injury, or surgical procedure.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[11] Stenosis is an abnormal narrowing of a duct or canal.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

Plaintiff was seen at the Life Management Center of Northwest Florida on November 4, 1999.  R. 127.  Problems noted were vegetative symptoms of depression with mood swings from hypomanic to manic episodes.  *Id.*

On December 6, 1999, Plaintiff was seen by Charles H. Wingo, M.D., for his spinal problems.  R. 107.  He was found to have "obvious kyphotic deformity with forward bending."  *Id.*  The diagnosis was Scheuermann's kyphosis.[12]  *Id.*  It was recommended that Plaintiff have "an exercise fitness program to stabilize his trunk in association with weight reduction."  *Id.*  He was deemed "not at risk for progression or neurologic problems," however.  *Id.*  It was recommended that he be again evaluated in two to five years.  *Id.*

Plaintiff was examined on a consultative basis on April 27, 2000, by James E. Hord, Jr., Ph.D.  R. 145-147.  Plaintiff said that he had taken Zoloft in the past, but it caused him to have bad anxiety attacks.  R. 146.  He said he had problems with his temper at work while taking medications, and at that time was not taking any medications.  *Id.*  Plaintiff said he quit his Wal-Mart stock clerk job due to stress.  *Id.*  Plaintiff reported that he cleans his home and takes care of his mother's dog.  *Id.*  He listed no other activities.  *Id.*  He denied any history of drug or alcohol abuse.  *Id.*  Dr. Hord found Plaintiff to exhibit controlled behavior in the office, speaking in a general monotone style.  *Id.*  His mood and affect were "clearly marked by depression and his attitude was one of mild belligerency but overall he was cooperative."  *Id.*  His posture

---

[12] Kyphosis is the abnormally increased convexity in the curvature of the thoracic spine as viewed from the side; it is also called hunchback.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

and gait were unremarkable.  *Id.*  Plaintiff's memory and concentration were intact.  R. 146-147.  His judgement and insight were "clear" but affected by his attitude and general emotional state.  R. 147.  Dr. Hord's diagnosis was "dysthymia, major depression – moderate – rule out," and "avoidant personality disorder."  *Id.*  He added that Plaintiff appeared to be "very neurotic" and he recommended ongoing mental health treatment.  *Id.*

Jack B. Shumate, M.D., board certified in neurology, examined Plaintiff for scoliosis on a consultative basis on December 20, 2000.  R. 157-159.  Dr. Shumate noted a prior medical history of agoraphobia, anxiety, depression, hyperactivity, attention deficit disorder, and marked mood swings.  R. 158.  Plaintiff said he stopped going to the Life Management Center because "they told him he would have to pay."  *Id.*  Dr. Shumate noted that Plaintiff was "quite obese."  *Id.*  He said that Plaintiff had trouble "getting on heels," but he could "get on toes okay."  *Id.*  Plaintiff had good strength in all four extremities, tendon reflexes were 2+ and symmetric, though sensation to pinprick was diminished on the left foot and vibratory sensation was very slightly diminished on the left side of the body.  *Id.*  Dr. Shumate's diagnosis was scoliosis and chronic back pain.  *Id.*  Dr. Shumate intended to refer Plaintiff to Life Management for treatment of his mental illness.  R. 159.  He also recommended blood testing.  *Id.*

On May 10, 2001, Plaintiff had x-rays of his spine.  R. 168.  Early degenerative changes in the facet joints at L5-S1 were noted, but there was no spondylolisthesis or paraspinal soft tissue masses.  *Id.*  There was a moderate levoscoliosis (scoliosis from the left) of the upper thoracic spine with a rotational component, but no osseous lesions

or paraspinal soft tissue masses.  *Id*.  The diagnosis was neck and back pain without

bony degenerative process.  R. 169.

On February 6, 2003, Plaintiff saw Kris Lewandowski, M.D., board certified in

internal medicine, for a consultative examination.  R. 161.  Plaintiff's chief complaint was

back pain.  *Id*.  His medications were noted as Lexapro,[13] Celebrex,[14] Prevacid,[15] and

Albuterol.[16]  *Id*.  Dr. Lewandowski found that Plaintiff was in no visible distress, walked

and sat without problems, and could dress and undress himself with both hands.  *Id*.

He found "minimal scoliosis" that was "non-tender to palpation" and without paraspinal

muscle spasm.  R. 162.  Plaintiff's extremities were normal in size and length, his joints

were not swollen, and passive and active movement was normal. *Id*.  All neurological

tests, including straight leg raising, were negative.  *Id*.  Dr. Lewandowski found that

Plaintiff appeared to be comfortable, changed position without difficulty, could bend

back 90 degrees, was able to tiptoe and heel walk, stood on one extremity with good

balance, and his grip and manual dexterity were normal.  *Id*.  He found Plaintiff to be

"seriously obese and he has minimal scoliosis but otherwise his physical examination is

normal." *Id*.  Dr. Lewandowski said that Petitioner's "functional ability including sitting,

walking, manual dexterity, and bending are not impaired in any major degree."  *Id*.  Dr.

---

[13] Lexapro is an orally administered selective serotonin reuptake inhibitor used as an antidepressant, for treatment of major depressive disorder.  PHYSICIANS' DESK REFERENCE (2005).

[14] Celebrex is a nonsteroidal anti-inflammatory, analgesic, and antipyrecic activities. PHYSICIANS' DESK REFERENCE (2005).

[15] Prevacid is given to inhibit gastric acid secretion.  PHYSICIANS' DESK REFERENCE (2005).

[16] Albuterol is a bronchodilator.  PHYSICIANS' DESK REFERENCE (2005).

Lewandowski found that Plaintiff could frequently lift and carry 11 to 20 pounds, and occasionally lift and carry 20 to 50 pounds.  R. 164.

On May 23, 2004, Plaintiff had a consultative mental health evaluation by Robert S. Kline, Psy.D.  R. 420.  Dr. Kline referred to Dr. Hord's evaluation of April 27, 2000. *Id.*  Plaintiff said that he sought disability benefits because he had had problems since he was a child.  *Id.*  He said he experienced panic attacks, could not be with people at all, and the problems had gotten "progressively worse."  *Id.*  Plaintiff said he was then prescribed Lortab[17] for pain as needed, but he took no psychotropic medication.  *Id.* Plaintiff said he had tried to work and wanted to but "just can't."  *Id.*  Dr. Kline found Plaintiff to be overweight, and eye contact during the interview was poor.  R. 420-421. Plaintiff's affect initially was angry, but later seemed depressed and anxious.  R. 421. Plaintiff said he was "shaky and nervous."  *Id.*  Dr. Kline administered an MMPI-II, finding the results to be valid.  He said:

> In general, Mr. Tamez presented a valid MMPI profile that is consistent with his reported functional difficulties.  Individuals that present with a profile code type like that produced by Mr. Tamez tend to be depressive and anxious, with the anxiety symptoms often leading to periodic anxiety attacks or being seen as "agitated depression."  Such individuals have trouble dealing with stress, are given to periodic mood disturbance, and often have trouble being held to high levels of accountability in stressful situations.  They are socially awkward, prefer to be isolated from others, and are often considered "loners" or "weird" by others.  Therapeutic intervention with such individuals is generally most successful when it targets the depressive symptoms before the anxiety symptoms.

---

[17] Lortab is one of the brand names for hydrocodone.  PHYSICIANS' DESK REFERENCE (2004), p. 3233.  Lortab is used to treat severe pain.  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

R. 421.  His diagnosis was major depressive disorder, recurrent, moderate, and anxiety disorder, NOS.  *Id.*

Dr. Kline said that though "it is possible for his mood disturbance to improve provided he receives adequate psychiatric and psychotherapeutic intervention, this is thought unlikely due to the duration of the symptoms."  R. 422.  Plaintiff said that he had "little physical difficulty engaging in work related activity and indicated that the major barrier to occupational pursuit at this time is his mood disturbance."  *Id.*  Dr. Kline said: "Currently, his mood disturbance is believed appreciable and it is thought that it does to at least some degree interfere with his daily functioning."  *Id.*

On May 31, 2005, Dr. Kline filled out a checklist expressing his opinion as to Plaintiff's mental ability to do work related activities, R. 424, elaborating upon his opinion that Plaintiff's mental impairment would interfere with his daily function "at least in some degree."  He said that Plaintiff had a "moderate" impairment of his ability to make judgments on simple work-related decisions.  *Id.*  "Moderate" was defined on this checklist as indicating that the person "is still able to function satisfactorily."  *Id.*  He also felt that Plaintiff had moderate restrictions upon his ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to work pressures and changes in a usual work setting.  R. 425.

**The Administrative Law Judge's decision**

At step 2 of the sequential analysis, the ALJ found that Plaintiff has two "severe" impairments, scoliosis and adjustment disorder.  R. 239.  He found at step 3 that neither impairment met or equaled a Listed impairment, and Plaintiff does not challenge this finding.  *Id.*  With respect to Plaintiff's mental impairment, the ALJ said:

> The evidence shows that the claimant's impairment caused a "mild" degree of limitation in the areas of activities of daily living and maintaining social functioning.  Further, deficiencies of concentration causing failure to complete tasks caused a "moderate" impairment and episodes of deterioration or decompensation occurred "once or twice."

R. 239.  He, therefore, found that Plaintiff's mental impairment did not meet a Listed mental impairment.  *Id.* and R. 240.  He found, however, that Plaintiff had suffered from depression for at least two years.  R. 240.

The ALJ recounted Plaintiff's testimony, finding that he did not suffer from pain and depression to the degree alleged.  R. 240-243.  The ALJ set forth a number of objective findings to support his conclusion that Plaintiff's testimony was not wholly credible.  These will be considered ahead since this the central error alleged here by Plaintiff.

The ALJ determined that Plaintiff retains the residual functional capacity to do medium work, with the limitation that he work primarily alone and have only limited contact with the public, supervisors, or co-workers.  R. 245.  It was found that while Plaintiff cannot do his past relevant work, he can do such jobs as were identified by the vocational expert, that is, automobile detailer, laundry worker, and hand packer.  *Id.* Consequently, it was found that Plaintiff is not disabled as defined by Social Security law.  *Id.*

### Whether the ALJ erred in failing to give proper weight to Plaintiff's testimony as to the degree of his symptoms

Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.  Social

Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect either exertional or

non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing:  (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged pain;
> or (b) that the objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d
> 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he
> must articulate explicit and adequate reasons for doing so.  *See Hale v.
> Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the
> reasons for discrediting subjective testimony requires, as a matter of law,
> that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d
> 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for

disregarding the claimant's subjective pain testimony must be based upon substantial

evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532

(11th Cir. 1991).  It is not necessary that the ALJ expressly identify this circuit's pain

standard if his findings "leave no doubt as to the appropriate result" under the law.

Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

"A claimant's subjective testimony supported by medical evidence that satisfies

the pain standards is itself sufficient to support a finding of disability.  Indeed, in certain

situations, pain alone can be disabling, even when its existence is unsupported by

objective evidence."  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations

omitted).  "[W]here proof of a disability is based upon subjective evidence and a

credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ

must either explicitly discredit such testimony or the implication must be so clear as to

amount to a specific credibility finding." *Id.* at 1562, *quoting*, <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983).

Plaintiff contends that it was error for the ALJ to discount his testimony because his "activities of daily living are inconsistent with his allegations of total disability." Doc. 46, p. 10. He also argues that it was error to disbelieve his testimony because he chooses to be non-compliant with medical management. *Id.* Cited for these arguments is page 27 of the record, which is the first administrative decision dated January 7, 2003, not the one that is before this court.

In the second opinion, the ALJ did not mention activities of daily living as a reason to disbelieve Plaintiff's testimony. R. 240-243. Thus, this issue is not before the court. The ALJ did mention non-compliance with medical management, however, reasoning:

> The Administrative Law Judge notes that the claimant chooses to be non-complaint with medical management of his condition. While he alleges back pain, he has acknowledged that he has not lost weight but has in fact gained a significant amount of weight. He has sought very little treatment for his complaints of pain or his alleged depression and anxiety. The record shows that he has not sought any psychiatric treatment since January 2003. Although the claimant states he cannot afford such treatment, there is no evidence that the claimant has made any effort to obtain treatment that might be available to him free or at a reduced price.

R. 242-243.

These findings are supported by substantial evidence in the record. Plaintiff was treated at the Life Management Center. Plaintiff's lack of progress in losing weight may be connected to his depression, but he testified that no physician advised him to lose weight and that is contradicted by the medical records discussed above. The record shows that his physicians have recommended that he lose weight and he has not.

While Plaintiff claims that he did not return for mental health treatment because payment was required, Plaintiff has not come forward with any evidence that he has attempted to obtain mental health care without cost and was denied.  Further, there are no medical records to show that usual psychological therapy or psychotropic medications have been tried and failed.  In summary, the two arguments presented by Plaintiff are insufficient to find that the ALJ's credibility findings are not supported by substantial evidence in the record.

The Administrative Law Judge's credibility findings covered a number of other issues not challenged by Plaintiff.  With regard to Plaintiff's physical impairments, the ALJ noted that the MRI and x-ray imaging did not show significant impairment, and it was noted that Plaintiff was thought to be not at risk for progressive deterioration or neurological problems.  R. 241.  The only medical recommendation for back problems has been exercise and weight reduction.  *Id.*  None of the treating physicians identified any work related limitations.  *Id.*  Plaintiff had not lost weight as recommended, and he sought very little treatment for his complaints of pain.  R. 242.  Although not mentioned by the ALJ, Plaintiff told Dr. Kline that he had been prescribed Lortab, a strong pain medication, but there is no evidence in the medical records that this is so.  The consultative examining physicians, Drs. Shumate and Lewandowski, found no significant physical abnormalities other than scoliosis.  R. 241.  Dr. Lewandowski found that Plaintiff had the residual functional capacity to do medium work.  *Id.*  All of these reasons mentioned by the ALJ support his finding that Plaintiff's testimony concerning

his physical disability was not credible to the degree alleged and are supported in the record by substantial evidence discussed above.[18]

The Administrative Law Judge also considered the evidence concerning Plaintiff's mental impairment.  R. 242-243.  Plaintiff reported to Dr. Kline that this was the primary basis for his inability to work.  The ALJ noted that while Plaintiff said that he overdosed with Ativan in 1999, a drug screen found no evidence of Ativan in his system.  R. 242.  Plaintiff responded well to treatment on that occasion and was discharged with a GAF score of 70, reflecting mild symptoms at that time.  *Id*.  The ALJ found that the treatment records from the Life Management Center from November 18, 2002, through January 14, 2003, contain no specific limitations of function.  *Id*.  It was noted that Dr. Kline found moderate limitations, and concluded that Plaintiff would have some degree of difficulty in his daily functioning.  *Id*.  Hence, the ALJ determined that Plaintiff could still work if limited in his contact with the public, supervisors, and co-workers.  *Id*.  Finally, the ALJ determined that Plaintiff had sought very little treatment for depression or anxiety since January, 2003, and he found that Plaintiff had not presented evidence that he had "made any effort to obtain treatment that might be available to him free or at a reduced price."  R. 242-243.  All of these findings are supported by substantial evidence in the record.  Hence, the ALJ articulated sufficient reasons to discount

---

[18] The ALJ also cites to Exhibit 19F, radiological studies that revealed that Plaintiff's spine appeared to be normal.  R. 242.  The record in this case ends with Exhibit 18F, consisting of 7 pages.  R. 420-426.  Exhibit 19F is not in this record.  Therefore, this finding is not supported by substantial evidence in the record.  It is unnecessary to the ALJ's conclusion, however, as the conclusion is adequately supported by other substantial evidence.  Thus, there is no need to ask Defendant to determine whether a part of the record is missing.

Plaintiff's testimony concerning the severity of his depression and anxiety as limitations upon his ability to work.

**Conclusion**

For these reasons, the decision of the Commissioner to deny Plaintiff's applications for benefits followed the law and is supported by substantial evidence in the record.

Accordingly, it is **ORDERED** that the decision of the Commissioner to deny Plaintiff's applications for benefits is **AFFIRMED**.  The Clerk is directed to enter judgment for Defendant.

**DONE AND ORDERED** on September 7, 2007.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**